**In re DALE.**

Court of Claims of Ohio,
Victims of Crime Division.

No. V91–24277.

Decided Dec. 16, 1993.

*Joseph Honerlaw*, for Bobby E. Dale, Jr.

*Lee Fisher*, Attorney General, for the state.

OPINION OF THREE-COMMISSIONER PANEL.

This cause came to be heard before this panel of three commissioners on July 8, 1993 at 2:00 p.m. upon applicant Bobby E. Dale, Jr.'s October 8, 1992 objection and notice of appeal to the September 11, 1992 decision of the single commissioner.

The Attorney General, applicant, and counsel for the applicant attended the hearing and presented testimony, an exhibit, and oral argument for the panel's consideration.

The single commissioner had denied the applicant an award of reparations due to the applicant's failure to report the criminally injurious conduct to law enforcement officials within seventy-two hours or to show good for his delay in reporting the criminally injurious conduct. R.C. 2743.60(A) states in pertinent part:

"An award of reparations shall not be made to a claimant if the criminally injurious conduct upon which he bases his claim was not reported to a law enforcement officer or agency within seventy-two hours after the occurrence of the conduct, unless it is determined that good cause existed for the failure to report the conduct within the seventy-two hour period."

The evidence indicates that on approximately August 27, 1991, the applicant was assaulted by Ricky Ross and two unknown males. Applicant reported this criminally injurious conduct to the Cincinnati Police Department on September 24, 1991. Applicant contends he has good cause for the failure to report the criminally injurious conduct within seventy-two hours.

Applicant testified he was assaulted by Ricky Ross and two unknown males on or about August 27, 1991 as he was going into his apartment. Applicant had just returned from the store and was carrying three bags of groceries when the offenders approached him. The offenders asked for money, felt applicant's pockets for money, and then assaulted him. Applicant did not seek medical treatment immediately, but when he went to the hospital two days later, it was discovered his jaw had been broken on both sides. Applicant remained hospitalized for six days, and his mouth was wired closed for forty-five days.

Applicant testified he did not report the criminally injurious conduct until September 24, 1991 because he feared for his own safety as well as that of his family. Applicant lived in a high-crime area, and the assault occurred outside his apartment. Applicant had three small children, and his fiancee was pregnant. The offenders had threatened applicant that he would have to move if he reported

the criminally injurious conduct. Furthermore, shortly after being released from the hospital, while walking down the street with his fiancee, applicant was approached by two men he believed to be friends of the offender, Ricky Ross. These men intimidated applicant by their actions. Applicant felt, since the offenders knew where he and his family lived, it would be best to wait to report the criminally injurious conduct until he left the area.

Applicant and his family relocated as soon as he was physically able, and applicant immediately reported the criminally injurious conduct on September 24, 1991. Applicant fully cooperated with law enforcement officials and assisted in the prosecution of Ricky Ross, as stated in the affidavits of Cincinnati Police Detective Leon Lucke and Hamilton County Assistant Prosecutor Chris Van Harlingen. Applicant testified before the grand jury and Ross was indicted; Ross subsequently pled guilty to aggravated assault.

There are two purposes to the seventy-two-hour reporting requirement. The first purpose is to verify the occurrence while the second purpose is to ensure the investigation and prosecution of the offender. Both purposes of R.C. 2743.60(A) were fulfilled in this case because, while applicant did not report the criminally injurious conduct within seventy-two hours, he did report the criminally injurious conduct within three weeks of its occurrence, charges were filed, one of the offenders was apprehended, applicant testified before the grand jury, and the offender was indicted and subsequently pled guilty.

From review of the file and with full consideration given to the testimony, exhibit, and oral argument presented at the hearing, this panel finds the applicant's delay in reporting the criminally injurious conduct can be attributed to his justifiable fear for the safety of himself and his young family who lived at the scene of the criminally injurious conduct. Further, applicant immediately reported the criminally injurious conduct once he relocated. Therefore, applicant had good cause for his failure to report the criminally injurious conduct within seventy-two hours, and hence, the September 11, 1992 decision of the single commissioner shall be reversed. Further, the claim shall be remanded to the single commissioner for determination and referred to the Attorney General for further investigation and a new finding of fact and recommendation addressing applicant's economic loss.

IT IS THEREFORE ORDERED THAT:

1. The single commissioner's September 11, 1992 order (Jr. Vol. 1077, Pg. 95) is REVERSED;

2. This claim is remanded to the single commissioner for determination and referred to the Attorney General for further investigation and a new finding of fact and recommendation as to the applicant's economic loss;

3. The Attorney General shall file his amended finding of fact and recommendation on or before January 31, 1994;

4. The applicant may respond to the new finding of fact and recommendation within twenty-one days after it is filed by the Attorney General;

5. Costs be assumed by the reparations fund.

*So ordered.*

WILLIAM A. CARROLL, STEVEN A. LARSON and DALE A. THOMPSON, Commissioners, concur.